## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

(1)     ERIC BRAMLETT,                          )
                                                )
(2)     WESLEY COX, and                         )
                                                )
(3)     PAUL RUDNICKI,                          )
                                                )
        Individually and d/b/a PHIGOGAM,        )
        LLC, an unincorporated common           )
        law partnership,                        )
                                                )
                Plaintiffs,                     )
                                                )
vs.                                             )   Case No. __CIV-11-898-C_____
                                                )
(1)     JENNI FARLEY a/k/a JWOWW;               )
                                                )
(2)     JENNY FARLEY, LLC, a New                )
        York limited liability company;         )
                                                )
(3)     JWOWW BEAUTY, LLC, a New                )
        York limited liability company;         )
                                                )
(4)     AUSTRALIAN GOLD, LLC, an                )
        I n d i a n a   l i m i t e d   l i a b i l i t y  )
        company; and                            )
                                                )
(5)     NEW SUNSHINE, LLC, an Indiana           )
        limited liability company,              )
                                                )
                Defendants.                     )


### <u>VERIFIED COMPLAINT</u>

1.     The Plaintiffs, Eric Bramlett, Wesley Cox, and Paul Rudnicki, were college friends, having attended the University of Oklahoma together.  Collectively, Cox, Rudnicki and Bramlett will be referred to as Plaintiffs.  Plaintiffs each contributed to the ideas and business plans at issue in this litigation.  Each of them brought a particular bit of business savvy and/or experience with the tanning industry to the table that resulted in a synergistic partnership.  The resulting concepts, business plans, and product designs were so well conceived that they were appropriated whole cloth by Defendants and have been wildly successful.  In fact, Defendant Jenni Farley claimed that the tanning lotion, marketed in a bottle designed by Plaintiff Cox and promoted by her, set a record as the fastest tanning lotion to sell 115,000 bottles in only five months.  *See* Exhibit 1, March 18, 2011 tweets posted by Farley on her Twitter® account.  In the days before this Complaint was filed, Farley's Facebook® page featured her holding two bottles of tanning lotion featuring designs created by Plaintiffs.  *See* Figure 1, below.

2.     Plaintiff Wesley Cox is a graphic designer who does business as Winston Media, LLC.  Cox currently resides in Norman, Oklahoma, but during earlier times relevant to this litigation, he resided in Tulsa, Oklahoma.  Cox conceived, among other aspects of the Plaintiffs' intellectual property, the design of the bottle in which tanning lotions bearing the name "JWOWW" are currently sold by "Australian Gold."

3.     Plaintiff Paul Rudnicki owns tanning salons in the Oklahoma City, Oklahoma metropolitan area.  Rudnicki purchased the first tanning salon in 2003, shortly after



**Figure 1**: Farley's Facebook Page as of July 27, 2011

graduating from college.  He purchased a second tanning salon in 2007, and a third in 2009.

Currently, Rudnicki is working on the purchase of a fourth salon.  Rudnicki has, through

hands-on management and day-to-day operation of these three tanning salons become

intimately familiar with the tanning industry and tanning lotions.  Rudnicki resides in

Norman, Oklahoma.

4.     Plaintiff Eric Bramlett is an entrepreneur and internet marketing expert.  In 2006, he launched an internet based real estate brokerage that he currently operates. In 2009, he launched a real estate web applications and development firm, Displet.com, that has expanded to 21 markets in 24 months.  Bramlett resides in Austin, Texas.

5.     Together, Plaintiffs started a website to sell tanning lotions direct to the public. Plaintiff's direct-to-the-public website, Tantans.com, sold its first tanning lotion on October 22, 2007.  In operating Tantans.com, Plaintiffs realized that, to increase their margins, they needed to have their own line of tanning lotions, rather than simply carrying brands produced by others.  The profit margins selling lotions produced by others were simply not large enough to make the Tantans.com venture very profitable, but with their own line, they could put a larger portion of the sale price of each tanning lotion bottle in their own pockets. Plaintiffs wanted to avoid a position as a mere re-seller of tan lotions and to circumvent entrenched industry positions.

6.     Thus, in 2009, Plaintiffs began discussing the particulars regarding their own line of tanning products.  Fairly early in the discussions, they decided that having a celebrity tie-in would be desirable.  In considering possible celebrity associations, they made a connection between the reality show JERSEY SHORE® on MTV® ("Jersey Shore") and tanning products.  Jersey Shore premiered in December 2009, and three seasons have aired since that time.  The fourth season premiered on August 4, 2011.  The life of Jersey Shore cast members revolves around a daily routine involving working out at the gym, tanning, and

doing their laundry.  This routine has given rise to the acronym "GTL," which stands for "gym, tan, laundry," and this acronym is well known to Jersey Shore fans.  *See* e.g., Farley's August 4, 2011 Facebook post and Tweet in which JWOWW advises her fans to "Ask for some Jwoww Black Bronzer at your local tanning salon to get the T down in GTL...."  Since tanning was an integral part of the fame of Jersey Shore and its cast members, Plaintiffs decided to approach cast members about endorsing their independent line of tanning lotions.

7.     Plaintiffs agreed that they would each have an equal share in the proceeds from their own line of tanning products.  Each Plaintiff is a 1/3 owner of the business concept, the intellectual property, and all other valuable facets of the business enterprise or any resulting endeavor.  In dealing with this matter, Plaintiffs did business as Phigogam, LLC, though that entity was never formally organized as a limited liability company.  *See*, *e.g.*, Exhibit 2, at ¶1.10 (naming "Phigogam, LLC" a member of JWOWW Beauty, LLC, and an owner of 49% of that entity) and p.43 (Plaintiff Cox signing as "managing member" of Phigogam, LLC).  Therefore, Plaintiffs are *de facto* members of a common law partnership doing business under the name Phigogam, LLC.

8.     Initially, since Mike "The Situation" Sorrentino and Paul "Pauly D" Delvecchio were two of the best known Jersey Shore regulars, Plaintiffs first approached them with the idea.  However, Plaintiffs did not receive any initial response from Sorrentino and Delvecchio.  Instead of making additional efforts to interest Sorrentino or Delvechhio, Plaintiffs re-examined their approach and decided that a female spokesperson would actually

be preferable.  They considered approaching Nicole "Snooki" Polizzi, but they felt that her look was not what they needed.  Instead, they decided on approaching Defendant Jenni Farley, also known as JWOWW.  Her look and image was what Plaintiffs had in mind for promotion of their line of tanning lotions.

9.      Defendant Jenni Farley is also a regular cast member of Jersey Shore.  When not filming Jersey Shore in New Jersey, Farley resides in New York City, New York.  She is the owner of a U.S. Trademark application Ser. No. 77/938,448 for JWOWW in which she is represented by Rudolph ("Rudy") Fusco.  Farley owns or controls two limited liability companies named as Defendants herein, to wit:  JENNY FARLEY, LLC, a New York limited liability company; and JWOWW BEAUTY, LLC, a New York limited liability company.  Plaintiffs will reference Farley along with the two limited liability companies she owns or controls in this Complaint as Defendant "Farley Defendants" unless one of them is more specifically referenced.   When "Farley" alone is mentioned, Plaintiffs are referencing individual Defendant Jenni Farley.

10.      Defendant Australian Gold, LLC ("Australian Gold") is an Indiana limited liability company with its principal place of business ironically located at 6270 Corporate Drive, Indianapolis, IN 46278-2900.  Australian Gold manufactures and distributes a variety of well-known tanning products.  New Sunshine Enterprises, LLC, ("New Sunshine") which is a holding company set up to operate multiple smaller tanning companies purchased and aggregated under common ownership.  Australian Gold is a subsidiary of New Sunshine.

Many of Plaintiffs' emails were with individuals who work for New Sunshine, but that entity is synonymous with the businesses publicly known as Australian Gold.  When referencing both Australian Gold and New Sunshine herein, they will be called "Corporate Defendants."

11.     Plaintiffs first contacted Farley through her then-agent and boyfriend, Tom Lippolis.  The initial approach to Lippolis was via email on February 3, 2010.  *See* Exhibit 3, email from Plaintiff Cox to Lippolis.  That same day, Plaintiff Cox talked with Lippolis on the phone, then forwarded a proposal to Lippolis outlining the business proposition. *See* Exhibit 4, February 3, 2010 business proposal on "Phigogam" letterhead.  The initial proposal from Plaintiffs was for Farley to receive 20% of gross royalties.  Lippolis responded positively to the concept presented by Plaintiffs, but he indicated the percentage proposed by Plaintiffs was not agreeable.  *See* Exhibit 5, at p. 1, a February 6, 2010 email from Lippolis to Plaintiff Cox, in which Lippolis asserted that "20% royalties, no ownership etc is not going to fly."

12.     Shortly after these initial communications, Rudolph ("Rudy") Fusco, the Farley Defendant's attorney, became involved in discussions.  *See,* Exhibit 5 at p.2, a February 25, 2010 email from Fusco to Plaintiff Cox following on a teleconference between them. On March 15, 2010 Fusco sent a proposed operating agreement for JWOWW Beauty, LLC to Plaintiff Cox.  *Id.* at p.4, a March 15, 2010 email from Fusco to Plaintiff Cox with the operating agreement attached.  As noted above, Plaintiff Cox, on behalf of Phigogam, LLC, signed and sent the agreement back to Fusco.  *Id.* at p.5, a March 29, 2010 email from

Plaintiff Cox to Fusco with a copy sent to Lippolis; and Exhibit 2, the operating agreement signed by Plaintiff Cox on behalf of Phigogam, LLC.  In addition to returning an executed copy of the JWOWW Beauty, LLC operating agreement, Plaintiffs sent a $225 check to "Fusco Law Group" to pay the filing fee for JWOWW Beauty, LLC.  *See* Exhibit 6, check number 1031 dated April 15, 2010 drawn on the account of Tan Tans.  Fusco used the funds from this check to pay the filing fee for JWOWW Beauty, LLC.  JWOWW Beauty, LLC which was established about a month later on May 17, 2010 as a New York limited liability company naming "Fusco Law Group, PC" as the recipient of process for the LLC.

13.     Regarding the design of the bottle for the initial tanning lotion, Plaintiff Cox sent four original proposed designs for a tanning lotion bottle to Farley care of  Lippolis.  *See* Exhibit 7, July 11, 2010 email from Plaintiff Cox to Lippolis.  Exhibit 7 includes color versions of the four alternate designs prepared by Plaintiff Cox.  Each of the four designs is the subject of an issued United States copyright registration.  *See* Exhibit 8, copyright registration for Option One – "Black Gold"; Exhibit 9, copyright registration for Option Two – "Icy Black"; Exhibit 10, copyright registration for Option Three – "Baller Gold"; and Exhibit 11, copyright registration for Option Four – "Royal Gold".  The four design options are reproduced side-by-side in Fig. 2, and they will be referenced collectively herein as "Original Copyrighted Works."



**Figure 2**: Original Copyrighted Works

14.     Upon information and belief, Plaintiffs assert that Farley, or someone on her behalf, made revisions to Plaintiffs' designs, and they were transmitted back to Plaintiff Cox. *See* Exhibit 12, July 15, 2010 email from Lippolis to Plaintiff Cox along with a color version of the revised design.  The revised design combines elements of, *inter alia*, Option Three (banner shape and flat black background, for example) and Option Four (banner color and contrasting text color on the banner, for example), creating a derivative work from at least



two of the Original Copyrighted Works.   The derivative work created by Farley, or someone on her behalf, is reproduced in Fig. 3.

15.     Plaintiff Cox took the revisions by or on behalf of JWOWW and polished them to come up with the final design. A copy of the final design was transmitted to Defendant New Sunshine, LLC with a copy to Lippolis.  *See* Exhibit 13, July 26, 2010 email from Cox to

**Figure 3**: JWOWW's Derivative Work

Paula Ryan at New Sunshine, LLC along with a color version of the final design. The final design is reproduced in Fig. 4. The final design represented in Fig. 4 will hereinafter be referenced as "Final Bottle Design."

16.    Plaintiffs had identified and communicated with a couple of companies that were capable of producing tanning lotions, and Plaintiffs had worked up plans to purchase an initial allotment of the tanning lotion of around 20,000 bottles. *See* Exhibit 14, emails related to potential manufacturers of the tanning lotion and regarding purchase of an initial allotment.



**Figure 4**: Final Bottle Design

17.    In late July 2010 Lippolis, or someone else on behalf of Farley Defendants suggested to Plaintiffs the idea of taking the concept to Australian Gold. *See* Exhibit 15, emails related to approach to Corporate Defendants.    Plaintiffs were receptive to this, and they

worked with Lippolis to pitch the concept to Australian Gold, providing them with the product designs as well as other input into the proposed marketing campaign and product placement associated with their business plan. Plaintiffs sent their Final Bottle Design to Corporate Defendants for their consideration. Exhibit 15 at p.3, a July 26, 2010 email from Plaintiff Cox to Paula Ryan at New Sunshine with a copy to Lippolis. During a teleconference on or about July 26, the Corporate Defendants' personnel made it clear that they were very interested in the business developed by Plaintiffs. Subsequently, Wes Broyles from Australian Gold asked Plaintiff Cox for a "hi resolution" version of the Final Bottle Design, which Plaintiff Cox did. Exhibit 16, August 2, 2010 emails among Plaintiff Cox and Wesley Broyles at Australian Gold.

18.     Lippolis and Farley were dating when Jersey Shore began filming in 2009, but they broke up after Farley had a relationship with Paul DelVecchio, also known as "Pauly D" ("Pauly D"), a fellow Jersey Shore cast member, during the filming of the show's third season. The Farley-Lippolis breakup occurred during final negotiations with Australian Gold, and it was acknowledged by Plaintiff Cox in an email to Farley's attorney, Rudy Fusco, in which Cox asks if Lippolis will still be involved. *See* Exhibit 17, August 20, 2010 at 10:21 a.m. email from Plaintiff Cox to Fusco (Plaintiff Cox asking: "Have you heard from Tom recently? I have been unable to get in touch with him since the news broke about the big breakup. I am assuming that he is no longer involved with the venture?").

19.     Lippolis is currently suing Farley claiming, among other things, that he negotiated a tanning lotion contract on her behalf.  *See* Exhibit 18, verified complaint filed against Farley by Lippolis in New York State court.

20.     Rudy Fusco is a New York attorney who represents Farley.  Mr. Fusco represented Farley both before and after she split with Lippolis.  On information and belief, Plaintifs assert that Fusco is currently representing Farley in her various litigation and/or arbitration matters with Lippolis.  *See,* for example, Exhibit 19, an article from a Fox News related to a dispute between Farley and Lippolis about publication of nude pictures Lippolis took of Farley while they were still a couple.[1]  The Fox article quotes Fusco speaking on Farley's behalf as her attorney.

21.     Thereafter, both Fusco, on behalf of Farley, and Australian Gold ceased meaningful communication with Plaintiffs regarding their agreement.  Plaintiffs inquired about the status of the deal, but no meaningful responses were received.  *See* Exhibit 17.  Defendants have since refused to meaningfully communicate with Plaintiffs about the agreement, and Defendants', instead, appropriated the entire deal to themselves and cut Plaintiffs out of the picture.  Plaintiffs were left with no option to vindicate their rights but to file this suit.

---

[1]     The article is currently available online at http://entertainment.blogs.foxnews.com/2011/01/21/jwowws-lawyer-blocked-nude-pix-a-lot-more-graphic-than-her-ex-admits/

## JURISDICTION AND VENUE

22.     Jurisdiction and venue of this Court are properly invoked under 28 U.S.C. §§ 1331, 1332, 1337, 1338, 1367, 1391(b) and (c) and 1400 for Plaintiffs' claims arising under 17 U.S.C. § 101 et seq and related causes of action as more fully set forth below.

## FIRST CAUSE OF ACTION
### Copyright Infringement

23.     Plaintiffs restate and incorporates herein by reference the preceding and subsequent allegations of this Complaint.

24.     Plaintiffs' Original Copyrighted Works comprise original works of authorship fixed in a tangible medium of expression.

25.     Plaintiffs' Original Copyrighted Works are registered with the United States Copyright Office, and, as an owner and holder of copyright protection, has the exclusive rights of reproduction, preparation of derivative works, distribution, and display of same. 17 U.S.C. § 106.

26.     Defendants copied, distributed and sold, without Plaintiffs' consent or permission, Plaintiffs' works for Defendants' commercial use and benefit, including without limitation, for the purpose of financial gain and obtaining a competitive edge over Plaintiffs and competing tanning lotion retailers.

27.     By way of illustration, and not of limitation, Farley prepared a derivative work from Plaintiffs' Original Copyrighted Works, to wit, a modification that was transmitted by

Farley or on her behalf back to Plaintiffs. *See* Fig. 3. Thereafter, Plaintiff Cox prepared the Final Bottle Design.[2] *See* Fig. 4. The Final Bottle Design incorporated creative elements from the Original Copyrighted Works and from the modifications transmitted by, or on behalf of, Farley back to Plaintiffs. Defendants then took and appropriated the Final Bottle Design and used it commercially on a product known as "JWOWW Black Bronzer," which Farley is holding in the picture included in this Complaint as Fig. 1. Plaintiffs have valuable rights in both the Original Copyrighted Works and in the Final Bottle Design, and these rights are referenced herein as Plaintiffs' Copyrights.

28.   A large volume of the tanning lotion has been sold by Corporate Defendants in bottles bearing the Final Bottle Design. Farley reported that 115,000 bottles of "Black Bronzer" were sold in the first five months it was marketed. *See* Exhibit 1 (115,000 sold as of March 16, 2011). That is a pace of around 23,000 bottles per month. At that pace, an additional 115,000 bottles or so would have been sold between March 16, 2011 and the time this Complaint is being drafted in early August 2011. Thus, total sales of the Black Bronzer product have been around 230,000 bottles by early August 2011. For each of these bottles of Black Bronzer, damages, including, but not limited to a reasonable royalty are owed associated with use of Plaintiffs' Copyrights.

---

[2] The Final Bottle Design is also properly the subject of a copyright registration naming Plaintiff Cox as an author. However, since the Final Bottle Design also incorporates contributions from Farley, Plaintiffs did not seek copyright protection on this work, but they are seeking an order of the Court requiring Farley to reasonably cooperate in the registration of the final Bottle Design with the U.S. Copyright Office.

29.     In addition to the Black Bronzer product, Defendants developed and marketed a "Private Reserve" ultra toning black bronzer.  *See* Exhibit 20, March 18, 2011 tweets by Farley related to the "Private Reserve Toning Bronzer."  As can be seen from the picture provided by Farley in her tweet, the design is clearly derived from, and a modification of, the design used on the Black Bronzer bottle.  In short, the Black Bronzer bottle had a black background with a gold shield bearing a shaded gradient whereas the Private Reserve Toning Bronzer has a gold-flecked background and shield.  The Private Reserve Toning Bronzer bottle design is reproduced in Fig. 5.  Damages, including but not limited to royalties, are also owed in connection with the Private Reserve Toning Bronzer's infringement on Plaintiffs' Copyrights.



**Figure 5**: Private Reserve Toning Bronzer

30.     Defendants are introducing a "Skincare Kit" on or about September 25, 2011, and the publicity materials for these products show bottle product packaging designs that also infringe on Plaintiffs' Copyrights.  *See* Exhibit 21,

press release from Corporate Defendants.  Products in the Skincare Kit include a facial cleanser, an eye therapy cream, and a color enhancing moisturizer.  The Skincare Kit will be marketed with a suggested retail price of $49.99.  This expansion of Defendants' product slate, as currently shown in the release, will continue Defendants' infringement of Plaintiffs Copyrights.

## SECOND CAUSE OF ACTION
### Vicarious and/or Contributory Copyright Infringement

31.     Plaintiffs restate and incorporate herein by reference the preceding and subsequent allegations of this Complaint.

32.     In conjunction and/or in concert Defendants copied, reproduced, sold, and distributed Plaintiffs' protected artwork for Defendants' financial gain.

33.     Defendants knew or should have known that their conduct would infringe Plaintiffs' rights in their copyrighted works, to wit, Defendants had actual or constructive knowledge regarding copying, reproducing, distributing and selling the subject works, and Defendants failed or refused to stop same, which resulted in an infringement of protected works of expression, and that said conduct would damage Plaintiffs.

34.     Farley had intimate personal knowledge of the development of the copyrighted works and of the derivative work on the Final Bottle Design.  Corporate Defendants knew or should have known that Plaintiffs authored works that were incorporated into the Final

Bottle Design.  After all, Australian Gold specifically asked Plaintiff Cox to provide a high resolution version of the derivative work present on the Final Bottle Design.  *See* Exhibit 16.

### THIRD CAUSE OF ACTION
### Breach of Contract

35.     Plaintiffs restate and incorporate herein by reference the preceding and subsequent allegations of this Complaint.

36.     Plaintiffs formed agreement with Farley Defendants to split revenue and other benefits from the sale and promotion of JWOWW-branded tanning lotions and associated products.   Plaintiffs were to receive 49%, and Farley Defendants would receive the remaining 51%.  In contravention of this agreement, Farley Defendants have kept all of the revenue associated with sale and promotion of JWOWW-branded tanning lotions and associated products.

37.     Given the above-noted sales volume of circa 230,000 bottles of lotion with Farley Defendants receiving $2.50 per bottle, Farley Defendants have already received nearly $600,000 in compensation from Corporate Defendants, damaging Plaintiffs by at least $300,000.

38.     Farley Defendants have received not only cash, but also trips, co-promotion value, and other items of value from Corporate Defendants.  For example, earlier this year Corporate Defendants provided Farley Defendants with a high-end tanning bed.  See Fig. 6 (described by Farley as "sick," which means, upon information and belief, that she really



**Figure 6**: March 25, 2011 Tweet About Tanning Bed from Australian Gold

liked it).  Plaintiffs seek their contractual percentage of the fair market value of all items of value received by Farley Defendants.

### FOURTH CAUSE OF ACTION
### <u>Unjust Enrichment</u>

39.    Plaintiffs restate and incorporate herein by reference the preceding and subsequent allegations of this Complaint.

40.    The money lost by Plaintiffs constitutes a benefit conferred upon Defendants by Plaintiffs.  Under the circumstances, and as a matter of equity, Defendants were unjustly enriched by their receipt of that money and other items of value, and Defendants should return that value to Plaintiffs.

41.    Defendants received and retained money and other items of value due and owing to Plaintiffs. The retention of these monies by Defendants resulted in an increase in

Defendants' profits and a harmed Plaintiffs. Defendants' retention of such profits is unjust and unwarranted for all of the reasons set forth herein.

## FIFTH CAUSE OF ACTION
### Accounting

42.     Plaintiffs restate and incorporate herein by reference the preceding and subsequent allegations of this Complaint.

43.     Plaintiffs seek a declaration of amounts relevant to contractual and royalty calculations.  To this end, Plaintiffs seek a full accounting of sales associated with JWOWW-branded tanning lotions and associated products and also of payments by Corporate Defendants to Farley Defendants in connection with sales of JWOWW-branded tanning lotions and associated products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows and for the following relief:

a.      That Defendants, their subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with them, or any of them, be temporarily and preliminarily enjoined during the pendency of this action, and permanently enjoined thereafter from further infringing Plaintiffs' Copyrights.

b.      That Defendants be directed to fully compensate Plaintiffs for all damages attributable to Defendants' direct, indirect, or contributory copyright infringement.

c.      That Defendants be ordered to deliver to Plaintiffs all products that result from Defendants' copyright infringement.

d.      That Defendants be required to account for all gains, profits, advantages, and unjust enrichment derived from their violations of copyright law.

e.      That Plaintiffs be awarded punitive damages.

f.      That Plaintiffs be awarded damage consistent with Farley Defendants' breach of their agreement with Plaintiffs.

g.      That Plaintiffs be awarded damages to rectify Defendants' unjust enrichment.

h.      That Plaintiffs be awarded reasonable attorney's fees.

i.      That Plaintiffs be awarded the costs of suit, and an assessment of interest.

j.      That Plaintiffs have such other, further, and different relief as the court deems proper under the circumstances.

Respectfully submitted,

/s/ Edward L. White

Edward L. White, OBA #16549
Edward L. White, P.C.
9301 Cedar Lake Ave., Suite 200
Oklahoma City, Oklahoma 73114
Telephone:  405-810-8188
Facsimile:  405-608-0971
Email:  ed@edwhitelaw.com

-and-

S. Alex Yaffe, OBA #21063
Eric Cavett, OBA #22098
FOSHEE & YAFFE LAW
P.O. Box 890420
Oklahoma City, Oklahoma 73189
Telephone:  405-264-5777
Facsimile:  405-632-3036
Email: ayaffe@fosheeyaffe.com
         ecavett@fosheeyaffe.com

**ATTORNEYS FOR PLAINTIFFS**

**ATTORNEYS' LIEN CLAIMED**

**JURY TRIAL DEMANDED**

VERIFICATION

The undersigned named Plaintiffs have reviewed this Verified Complaint, and the Exhibits referenced therein, and they affirm and certify that, to the best of their knowledge and based on a reasonable review of information available to them at present, that it is true and correct.

X _____

Eric Bramlett
Date: _____8/10/11_____

X _____

Wesley Cox
Date: _____08-08-11_____

X _____

Paul Rudnicki
Date: _____8-8-11_____